IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| HAROLD LITTLE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Nos.   04 C 3724 |
| v. | ) | |
| | ) | The Honorable William J. Hibbler |
| JO ANNE BARNHART, Commissioner of Social Security | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Harold Little was found disabled and entitled to Social Security Disability Insurance Benefits ("DIB") beginning in 1985. Following a continuing disability investigation sixteen years later, the Social Security Administration ("SSA") determined on April 11, 2001, that Little had improved medically, was able to work, and therefore was no longer entitled to DIB as of June 2001. On April 30, 2001, Little filed for reconsideration of the denial of his DIB with the SSA. After reconsideration, on October 23, 2001, the SSA again determined that Little's health had improved and that he was able to work, and thus that he was no longer disabled. Little subsequently requested a hearing before an Administrative Law Judge ("ALJ"), which commenced on March 12, 2002. On May 24, 2002, the ALJ, Allen Jonas, ruled that Little was not disabled and denied continuation of Little's previous award of disability benefits. After the SSA Appeals Council denied Little's request for review of the ALJ's decision, Little filed this action to review the ALJ's decision.

1

I. **Facts**

Little first filed an application for DIB on June 14, 1985. (R. at 78).[1] He was found to be disabled due to chronic kidney disease and renal failure which required hemodialysis. Little was allowed DIB commencing March 24, 1985. (R. at 18). Little had kidney transplant surgery in 1987, but that transplant soon failed and Little continued receiving dialysis. Little received a second transplant in 1994, which was successful.

After the second transplant surgery, Little saw a string of doctors with a variety of complaints. (R. at 19). Stuart Rosenbush, M.D., a cardiologist, examined Little on January 23, 1996. He recommended increasing Lopressor to deal with Little's elevated blood pressure and chest palpitations. (R. at 191-192). On January 29, 1998, William Deutsche, M.D., an ophthalmologist, saw Little for complaints of intermittent pain in the left temporal region, but he found no vision problems. (R. at 193). Little's blood pressure and pulse was normal, and a stress test in October 1999 was normal. (R. at 194). Kumar Venkat, M.D., and John Schaffner, M.D., gastroenterologists, examined Little on January 23, 1997, upon the referral of Scott Palmer, M.D., Little's treating physician. (R. at 208). They noted Little had episodes of diarrhea followed by constipation, and they recommended increased fiber. On December 20, 1999, Michael Brown, M.D., examined Little for complaints of chronic diarrhea and epigastric pain. Dr. Brown opined that it may be just a functional complaint, but he ordered an endoscopy and colonoscopy to rule out other problems. (R. at 217). The colonoscopy results were normal. (R. at 227-28).

Stephen Jensik, M.D., saw Little numerous times after Little's second transplant, and in the last three visits prior to the hearing before the ALJ (March 29, 2001, August 20, 2001, and February

---

[1] Cites to the Administrative Record will be referred to as "(R. at ___)."

2

18, 2002), Dr. Jensik completed reports indicating Little enjoys excellent renal functioning. (R. at 307-12). Dr. Brown examined Little again on April 2, 2001, for left upper quadrant pain and constipation, but did not believe there to be any structural problem. (R. at 242-243). Little underwent a normal flexible sigmoidoscopy on April 5, 2001. (R. at 244). Dr. Palmer also treated Little on an ongoing basis since 1994. Dr. Palmer's report from March 8, 2002, documents Little's complaints of episodic fatigue, and opines that the fatigue is due to his medications and that Little is mildly immune compromised. (R. at 304-05). Dr. Palmer reported Little could not lift more than ten pounds on a regular basis and could not engage in any sustained physical activity. As of March 2002, Little was taking the following medications: Prograf, Prednisone, Toprol XL, Lorazepam, Prilosec, Lipitor, Nifedipine, aspirin, and Miralax. (R. 304-06). Little will have to be on most of these medications for the rest of his life. (R. at 74).

At the hearing, Little testified that his daily activities consist of waking up at 8 or 8:30 a.m., taking a shower, eating meals, reading the paper, taking his medicines, taking an hour nap, watching TV, and going to bed. He also drives to the store, cleans the house, and does the dishes. (R. at 38-39). Little's knees bother him, and his medicines make him groggy, tired and sometimes dizzy. (R. at 39; 56). He gets headaches sometimes due to excess red blood cell production, and approximately every four months Little goes to the hospital to have his blood aspirated. (R. at 34). Little's ankles and shoulder bother him from the steroid medication he takes. (R. at 51-52). Little gets too tired to walk more than a few blocks a day, and he gets short of breath when he goes upstairs. (R. at 53-54; 34). Little cuts his lawn with a self-propelling mower about once ever two weeks for ten minutes at a time. (R. at 55).

Dr. Donald Charous, a medical advisor who testified at the request of the ALJ, read the doctor reports and listened to Little testify. Dr. Charous opined that Little has a severe impairment because he has had two kidney transplants and he is on many medications. (R. at 35-36). He testified that Little could not lift more than ten pounds on a regular basis, but that Little could perform light work, which may require standing six hours a day. (R. at 37-38). Dr. Charous explained that Little's fatigue is a question of judgment, and he found it difficult to make a definitive statement as to Little's long term disability status to a reasonable degree of scientific certainty. (R. at 74). Dr. Charous opined that Little's fatigue is primarily caused by the Toprol and Prograf, and possibly the Nifedipine.

Little's wife, Barbara, testified that her husband got "so much better" after receiving the second kidney transplant and improved medicines. (R. at 64). She testified, however, that Little still does not have much stamina; he is weak and fatigued, and he gets nauseous, light-headed and tired after he takes his medicine and needs to rest. (R. at 66; 70-71). Little's hands are shaky, but he does not drop things. (R. at 72-73). Around the house, Little washes dishes, does some laundry, feeds the dog, vacuums, and straightens up. (R. at 70). Barbara does the deep cleaning. (R. at 70).

After hearing this testimony and reviewing the records, the ALJ determined that Little's disability had ceased as of April 1, 2001. (R. at 18). The ALJ found that although Little continues to have a severe medical impairment (R. at 23-24), Little has improved medically, increased his ability to perform substantial gainful activity, and could now perform sedentary work activities. (R. at 19). The ALJ found that as of April 1, 2001, Little retained the following residual functional capacity: "lifting and/or carrying 10 pounds occasionally or 5 pounds frequently and to be able to perform such other activities that are consistent with the full range of sedentary work activity." (R. at 19). The ALJ determined that Little had no nonexertional limitations. (R. at 24). In reaching this

decision, the ALJ considered Little's complaints of side effects from his medications, including hearing problems, joint aches, shortness of breath, fatigue, upper quadrant pain, and high blood pressure. (R. at 19-22). The ALJ also considered that Little testified he could lift ten pounds on a regular basis, drive, shop, and perform household chores. (R. at 23). The ALJ then applied the Medical-Vocational Guidelines to find that Little is "not disabled" under Rule 201.21.

## II. Standard of Review

An ALJ's factual findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Although a court reviews the entire record, it may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The ALJ, however, must rationally articulate the grounds for the decision and build an accurate and logical bridge from the evidence to the conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

## III. Analysis

In order to determine whether a disability has continued or ended, the ALJ must determine "if there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work." 20 CFR § 404.1594; 42 U.S.C. § 423 (f). In addition, the ALJ must show that the claimant is "currently able to engage in substantial gainful activity" before the ALJ can find the claimant no longer disabled. *Id.* Little does not dispute that his case showed medical improvement after his second kidney transplant in 1994. Rather, he disputes that his medical improvement is related to his ability to work and that he can perform substantial gainful activity.

Medical improvement is related to the ability to work if it is accompanied by an increase in the claimant's "functional capacity" to do basic work activities. 20 CFR § 404.1594 (b). What a person can still do despite an impairment, is the residual functional capacity ("RFC"). *Id.* The RFC is used to determine whether a claimant can do his or her past work or any other work. In this case, the ALJ determined that Little's RFC had increased, and thus that Little's medical improvement related to his ability to do work. Specifically, the ALJ found that Little's RFC as of April 1, 2001, was: "lifting and/or carrying 10 pounds occasionally or 5 pounds frequently and to be able to perform such other activities that are consistent with the full range of sedentary work activity."

The Regulations state that "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 CFR § 404.1567 (a). The ALJ considered the side effects of Little's medications, including Little's claims of fatigue, but he determined that Little's symptoms were not of such severity as to "preclude all types of work activity and are not consistent with the evidence as a whole and are not generally persuasive." (R. at 23-25).

The ALJ articulated several rational grounds for his decision. *Steele*, 290 F.3d at 941. The ALJ considered Little's testimony of fatigue, but determined that the fatigue was not disabling because it did not prevent Little from doing certain work, such as lifting ten pounds regularly and doing chores around the house. The ALJ considered Little's complaints of episodic pain, but did not consider that pain to be sufficiently disabling because of the activities Little was able to perform. The ALJ also considered the documentary evidence. Little's doctors and Dr. Charous agreed that Little's

6

medications can cause fatigue. However, none of them could state to any degree of scientific certainty whether the fatigue was or will be disabling, and Dr. Charous, in fact, determined that Little could perform light work. The ALJ determined that the doctors' reports as to Little's activities and abilities, including Dr. Jensik's opinion that Little enjoys excellent renal functioning, did not support a finding that Little was disabled. Thus, the ALJ rationally showed that Little's RFC had increased, and thus that Little's medical improvement related to his ability to do work. 20 CFR § 404.1594; 42 U.S.C. § 423 (f).

The ALJ, however, did not properly demonstrate that Little is currently able to engage in substantial gainful activity; i.e., that Little can do his past work or any other work. In making this determination, the ALJ was "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [Little] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1594 (f)(8). The ALJ determined Little could perform a full range of sedentary work by applying Medical-Vocational Rule 201.21, which allows the ALJ to find the existence of occupations through administrative notice." 20 C.F.R. § 404.1567. The Medical-Vocational Rules, however, may only be directly applied when the limitations imposed by impairments and symptoms affect only the ability to meet the strength, or exertional, demands of jobs. 20 C.F.R. § 404.1569. When symptoms affect nonexertional limitations, such as pain and fatigue, the ALJ is required to obtain specific vocational evidence on Little's ability to perform sedentary work, such as the testimony of a vocational expert. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Fatigue and pain can affect nonexertional limitations such as the ability to stay alert and attend to tasks, and thus application of the grid rules in this case was improper. *Id.*

7

Therefore, this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

IT IS SO ORDERED.

_____6/6/05_____  
Dated

_____[signature]_____  
The Honorable William J. Hibbler  
United States District Court